UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHARON M. GETCHELL, | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:10-cv-00424-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) |
| Defendant | ) ) |

# REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Sharon M. Getchell, a 59 year old woman who stopped performing substantial gainful activity in 1997, has failed to demonstrate the onset of disability prior to the expiration of her Title II disability insurance, resulting in a denial of Getchell's application for benefits under the Social Security Act. Getchell commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the April 29, 2010, decision of Administrative Law Judge Katherine Morgan because the Decision Review Board did not complete its review during the time allowed. Judge Morgan's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 10-2, R. 1, 7-15.[1])

At step 1 of the sequential evaluation process, the Judge found that Getchell last met the insured status requirements of Title II on September 30, 2000, and has not engaged in substantial

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 10.

gainful activity since January 1, 2000, the date of alleged onset of disability. (Findings 1 & 2, R. 9.)

At step 2, the Judge found that Getchell has the following medically determinable impairments: post-traumatic stress disorder, depression, fibromyalgia, type II diabetes mellitus, and hypertension. (Finding 3, R. 9.) However, the Judge further found that Getchell did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months, prior to the expiration of her insured status in 2000.[2] (Finding 4, R. 9.) In addition to other evidentiary sources, the Judge relied on the opinion of a testifying expert to reach this finding. (R. 14, 36-42.) The Judge's finding resulted in a determination that Getchell was not disabled as of her date last insured under Title II and denial of her claim. (Finding 5, R. 15.)

### Discussion of Plaintiff's Statement of Errors

Getchell argues that the testifying medical expert found two listings to be met as of the date last insured. (Statement of Errors at 1.) Getchell alternatively contends that the medical expert was "not appropriate" because the expert was a medical doctor who did not specialize in mental health treatment. (Id. at 5.) According to Getchell, the nature of her impairments requires a finding that they were long-standing and were disabling as of her date last insured. (Id. at 3-4.) Getchell also argues that there is a violation of Ruling 96-2p and/or Ruling 96-5p based on underdevelopment of the record, arguing that a specialist should have served as the medical expert or that the mental health treatment provider, Dannel Starbird, Ph.D., should have been contacted for additional information. (Id. at 6-7.) Getchell's argument in summation is as follows: "The Starbird material, together with a fair reading of the [medical expert] testimony,

---

[2] The Administration previously approved Getchell for supplemental security income as of January 1, 2002, but these benefits were terminated due to Getchell's family income or other financial resources. (R. 11.)

even if she was beyond her practice specialty, deprives the Defendant of substantial evidence to support his Decision." (Id. at 7.)

## A. The Record

There is a 2004 discharge summary from Thomas Murray, MD, of Mayo Regional Hospital giving a list of discharge diagnoses, including unspecified left flank pain, morbid obesity, diabetes mellitus, hyperlipidemia, hypertension, chronic back pain, and fibromyalgia, following an admission for kidney pain. (Ex. 2F, R. 201-202.) It appears that constipation was the acute condition that resulted in Getchell's hospital visit. (R. 202-203.) Getchell obtained another admission to Mayo Regional in 2006. The discharge diagnosis was "obstipation" (obstinate constipation) and left renal colic (abdominal pain associated with kidney stones). (R. 309-10.)

Progress notes from the primary care provider indicate shoulder, neck and back pain and a history of fibromyalgia consisting of widespread musculoskeletal pain. Getchell's treatment is complicated by obesity, diabetes, and severe deconditioning. (Ex. 4F, R. 363; Ex. 5F, R. 380-81.) Treatment for chronic pain has included injections. (Ex. 8F, R. 591.) Administrative records associated with the diagnosis and treatment of Getchell's physical ailments date back to at least 1999. These indicate the presence of obesity, constipation, musculoskeletal back pain, diabetes, hypertension, and fibromyalgia. (Ex. 5F, R. 458-59.)

Administrative records associated with the diagnosis and treatment of Getchell's mental ailments date back only so far as 2002. The earliest record is a letter composed by Dannel Starbird, Ph.D., dated March 19, 2002, describing Getchell as mentally disabled due to major depressive disorder, post-traumatic stress disorder, and anxiety disorder. (R. 13F, R. 640.) This letter references a course of treatment beginning in May 2001. (Id.)

3

The District Office granted Getchell supplemental security income commencing January 2002 based on the medical evidence and Getchell's allegations, without involvement on the part of an administrative law judge. (R. 20-21.) These benefits eventually stopped due to an increase in the income obtained by Getchell's husband. (R. 21.)

Maine Disability Determination Services developed Getchell's current disability insurance claim in the second half of 2007. Lawrence Johnson, MD, provided a physical residual functional capacity assessment on July 2, 2007. (Ex. 9F.) He found no exertional limitation, postural limitation, manipulative limitation, or other physical limitation and noted the lack of any treating source statement on physical capacities. (R. 595-600.) David Houston, Ph.D., performed the psychiatric review technique (PRT) on July 11, 2008. (Ex. 10F.) He assessed the period of January 1, 2000 (alleged onset) to September 30, 2000, and found there was insufficient evidence of a severe mental impairment. (R. 602.) A narrative comment notes: "There is no medical evidence for DLI [date last insured] time period." (R. 614.) Peter Allen, Ph.D., provided a second opinion on a request for reconsideration. His PRT form dated October 29, 2008, indicates the same conclusion as that offered by Dr. Houston. (Ex. 11F, R. 616.) His assessment: "No new sources. There is still insufficient evidence to assess the claimant's impairments from 1/1/00 to 9/30/00." (R. 628.) Donald Trumbull offered a new physical residual functional capacity assessment on November 3, 2008. (Ex. 12F.) He drew the same conclusion with respect to the evidence of physical impairment pre DLI. (R. 631-35.)

In a letter to counsel dated February 26, 2009, Dannel Starbird, Ph.D., Licensed Psychologist, supplied an opinion as to the "onset of [Getchell's] disabling condition, and whether it was present in or before 1999." (Ex. 13F, R. 638.) Dr. Starbird reported that he began treating Getchell in May 2001. Dr. Starbird indicated that Getchell suffered, at that time,

4

from "a very severe psychological/psychiatric condition." (R. 638.) He opined that this condition was likely longstanding, noting Getchell's report of leaving work in 1997 due to inability to handle the demands of work based on a nervous condition. (R. 639.) Dr. Starbird wrote that he was "confident" that Getchell "was clearly unable to gain or maintain regular employment as early as when she discontinued work." (Id.)

The Judge and counsel questioned Getchell at hearing concerning her subjective experience of her symptoms and their alleged onset. (R. 23-36.) Getchell testified that she started to have severe mental health symptoms (as in, "things were bad") starting about two years prior to her first visit to Dr. Starbird in May 2001. (R. 29.) As for her departure from her job in 1997, Getchell testified that mental and physical problems interfered, but also that particular aspects of the job made it difficult for her, including that she was staying overnights at a facility and felt "locked up." (R. 25.)

When called to testify, Dr. Young expressed the view that, if she were to base her opinion on Dr. Starbird's letter of February 2009, she would say that Getchell meets "most of the criteria" for listing 12.04 and listing 12.06. (R. 36.) In fact, Dr. Young's comments indicate that Getchell does meet listing 12.06 (anxiety related disorders) as of the hearing date and some date prior. (R. 36-37.) The Judge then reminded Dr. Young that "we need to go back to 1-1-00," to which Dr. Young responded that Getchell was not seeing Dr. Starbird at that time and that her primary care provider did not note Getchell's psychiatric symptoms until April 27, 2001 (more than one year after the date last insured). (R. 38.) The Judge then allowed counsel to question Dr. Young. Counsel called Dr. Young's attention to the March 2002 letter from Dr. Starbird (Ex. 13F), and Dr. Young observed:

> well he just comments disability was granted in 2001 and he thinks it should have

5

been retroactive to 1998, but I don't have down why he thought that, but I'm
    assuming it's from the history that he got at the time he first saw her. I, I did, I did
    see all of this, but, what, what was it in here that was more information you thought?

(R. 40.) Counsel responded that the earlier date of the letter lent support for an earlier onset date. (Id.) Dr. Young allowed that there was an indication of severe symptoms as early as 2002, and that it appeared that Getchell met two "B criteria" of the listings, meaning marked limitations maintaining both social functioning and concentration, persistence, and pace. (R. 42.) The hearing concluded thereafter.

B.  Discussion

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The Commissioner has concluded that Getchell has failed to establish disability as of her date last insured. Getchell has focused her energy on attacking this conclusion based on her mental impairments, with little utilization of the evidence associated with her physical conditions. Unlike the evidence concerning mental impairment, the medical records associated with Getchell's physical condition predate the date last insured. Nevertheless, despite the absence of any troublesome issue concerning the onset of physical problems, a consulting expert has assessed the longitudinal record and opined that a severe physical impairment is not demonstrated as of the date last insured. (Ex. 12F.) Moreover, though not recounted above, Dr.

6

Young also testified at the hearing that the evidence associated with physical function lacked objective findings or documentation of impairment. (R. 38-39.) The Judge agreed with these assessments and her analysis of the available evidence supplies substantial evidence in support of that finding when it is combined with the consulting experts' assessments.

What remains, and what Getchell focuses her challenge on, is the evidence associated with her mental health. Getchell's effort in this regard is subject to Social Security Ruling (SSR) 83-20 because the issue for determination is whether the record permits a finding not merely of existing disability, but of an onset of disability roughly eight months before Getchell sought medical treatment. The Ruling's policy statement reads, in part, as follows:

> POLICY STATEMENT: The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.
>
> A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s). Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.

SSR 83-20, 1983 SSR Lexis 25, *2-3, 1983 WL 31249, *1. The Ruling recognizes that there will be a need to draw inferences in some cases because "precise evidence" of onset will not be available. Such inferences require "a legitimate medical basis" and the Ruling therefore anticipates that an administrative law judge will "call on the services of a medical advisor when onset must be inferred." 1983 SSR Lexis 25, *6-7, 1983 WL 31249, *3. The Judge appropriately called a medical advisor to testify at Getchell's hearing.

At the commencement of Getchell's hearing, the Judge indicated that "Dr. Young" would

7

serve as a medical expert and described Dr. Young as a medical doctor. (R. 18.) Getchell's hearing counsel stated that she did not object to Dr. Young "serving in her area of expertise as an expert." (Id.) Thereafter, the Judge and counsel had a discussion of the fact that Getchell had received SSI benefits for a time and that these were discontinued due to increased household income. Counsel acknowledged that there was no prior Title II determination and that an earlier onset date was needed in order to obtain those benefits. (R. 22.) At the conclusion of that conversation, the Judge asked again whether counsel had an objection to Dr. Young serving as the medical expert at the hearing. Counsel again responded in the negative. (Id.)

Getchell argues that the record compelled the Judge to find that she was totally disabled as of September 2000. She also maintains that the Judge erred in her selection of Dr. Young to serve as a medical advisor for purposes of determining onset. The latter argument, for which Getchell fails to cite any authority, lacks merit. As a medical doctor, Dr. Young was presumptively qualified to address both physical and psychiatric conditions. Getchell's hearing counsel appropriately conceded that Dr. Young was qualified to address the issue at hand.

The Judge was faced with a difficult decision. Despite a history of some degree of abuse in childhood, Getchell's testimony described an exacerbation of mental health symptoms that brought on her treatment with Dr. Starbird. This testimony is consistent with a finding that Getchell was not mentally disabled as far back as 1997, when she left employment. Though it is not difficult to infer the presence of "severe" (more than mild) mental impairments as of the September 2000 date last insured, it is another matter to infer the existence of mental impairments severe enough to rule out all substantial gainful activity. Getchell did leave a job in 1997, in part due to concern over her mental health, but the job in question presented atypical challenges. Getchell described feeling "locked up" because she had to remain overnight on the

premises. (R. 25.) An inability to persist in that job, standing alone, does not persuasively indicate an onset of disability.

Getchell eventually became overwhelmed by depression, according to Dr. Starbird's letter opinion, but there is little in the way of objective information to rely on in support of a particular onset date.[3] The Judge noted these problems and was unwilling to draw the necessary inference based on the quality of the evidence. The record does not compel a contrary outcome. Among other evidence relied upon by the Judge was the fact that Dr. McDermott, the primary care physician, noted in July 2001 that "anxiety and depression issues are well controlled with Fluoxetine and her intervention with counseling." (R. 12; Ex. 5F, R. 441.) The Judge, who was present at the hearing, indicated that Dr. Young "was not able to testify about the claimant's limitations prior to her date last insured," and otherwise recounted the testimony accurately. (R. 13.) As for Dr. Starbird's opinion, the Judge chose not to rely on it because "he has not presented actual treatment notes[4] from the time in question and the undersigned does not find it believable that the claimant's psychiatric symptoms were disabling at a time when she was not even in treatment for them." (R. 14.) On this point, the Court might also note that the date last insured predates this course of treatment by over a year.

The Record does not compel a finding either way on the issue of onset. The Judge's assessment of the entire record and the negative inference she chose to draw are of a kind that a

---

[3] The paucity of objective evidence precludes a finding that the Commissioner somehow violated Social Security Ruling 96-2p, which addresses the circumstances in which controlling weight is extended to the opinion of a treating source.

[4] Getchell sought to supplement the record prior to oral argument. (Doc. No. 12.) This request sought to introduce roughly 25 pages of hand-written notes taken by Dr. Starbird during his consultations with Getchell in 2001 and 2002. In my order denying the motion to supplement, I observed that the notes were very difficult to read and, more importantly, that Getchell had not made reference to any findings or other passages found therein that would be of assistance to her claim for benefits. (Order on Mot. to Supplement at 1, Doc. No. 15.) In her statement of errors and at oral argument, Getchell persevered in the argument that consideration of the notes would result in a different outcome, noting that they include a chart reporting her scores on the Minnesota Multiphasic Personality Index. (Statement of Errors at 3.) Nevertheless, it remains conjectural that these materials would have altered Dr. Young's opinion. For example, Dr. Starbird has indicated that testing confirms his existing diagnoses, but he has not referenced the MMPI in support of a finding concerning an onset of disability in 2000.

reasonable mind might accept as adequate to support a finding.

Finally, Getchell contends that she has been deprived of due process of law and equal protection because the Decision Review Board failed to review the Judge's decision in the time allowed. (Statement of Errors at 7-8.) Getchell does not cite authority for this proposition and in the absence of such development I am not persuaded that the Decision Review Board's failure to consider her arguments resulted in a constitutional violation.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 22, 2011